IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**NELSON RIVERA,**
**D.O.C. # X73975,**

       **Plaintiff,**

**vs.**                             **Case No. 4:20cv532-WS-MAF**

**J. KYER, et al.,**

       **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate proceeding pro se, filed a civil rights complaint under 42 U.S.C. § 1983, ECF No. 1. Plaintiff was granted in forma pauperis status, ECF No. 5, and his complaint was deemed sufficient for service, ECF No. 6. Service was directed on March 1, 2021, ECF No. 8, and notices of appearance of counsel were filed for all four Defendants, ECF Nos. 9-10. After conducting limited discovery for the purpose of reviewing Plaintiff's grievances, ECF Nos. 11-12, Defendants filed a motion to dismiss, ECF No. 19, on June 11, 2021, and a supplemental declaration, ECF No. 20, a few days later. Defendants' motion asserts that Plaintiff did

not exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).

*Id.*  Plaintiff was advised of his obligation to file a response if he opposed

the motion, ECF No. 21, and Plaintiff's response, ECF No. 23, was timely

filed as it was given to prison officials to mail for him on July 19, 2021.

ECF No. 23 at 1.  The motion is ready for a ruling.

**Plaintiff's complaint, ECF No. 1**

Plaintiff alleged that in late December 2018, he was experiencing

"excruciating pain in [his] lower back and numbness in [his] right leg."  ECF

No. 1 at 6.  He submitted a sick call request, but it took until January 9,

2019, to be seen; he was given Ibuprofen and sent back to his dorm.

Plaintiff submitted numerous sick call requests and was seen in sick call on

three separate occasions, but diagnosed with a pinched nerve and only

given 40-mgs. of Ibuprofen.  *Id.*  Plaintiff alleged that he was not seen

again until January 22, 2019, when he "declared a medical emergency"

and was finally given an injection for pain, x-rays of his back, Naproxen,

and 500 mgs. of pain relievers.  *Id.*  When Plaintiff did not receive a follow-

up visit as he had been "assured" by Defendant Acosta, *see* ECF No. 1 at

8, he filed another medical emergency.  *Id.* at 6.  The nurse's referral for

him to "see the doctor immediately . . . still took a whole week."  *Id.*

Plaintiff was seen by Defendant Houck on February 15, 2019, and told "it was only arthritis," not a pinched nerve, and given 15 mgs. of Meloxicam. *Id.* at 7. Plaintiff continued experiencing pain, discomfort, and numbness and reported that the medications provided "little or no relief at all." *Id.* Plaintiff alleged that because of the ongoing numbness, he fell on March 4, 2019, and fractured his ankle. *Id.*

When Plaintiff was taken to the medical department, Defendant Kyer (a nurse) refused to treat him and said that Plaintiff was "faking an injury." ECF No. 1 at 7. She put Plaintiff "in a wheelchair and sent [him] back to the dorm." *Id.* at 8.

On March 13, 2019, Plaintiff again reported to sick call "with no satisfaction." *Id.* at 7. It was not until March 22, 2019, "18 days after the injury," that Plaintiff was given x-rays. *Id.* Plaintiff contends that he was "scheduled for emergency surgery" on March 29, 2019, but that was "canceled at the last minute." *Id.*

Plaintiff was eventually given surgery, but alleges that his ankle "was improperly repaired." *Id.* at 7. He says that he is "still experiencing excruciating pain and swelling in the right ankle" and contends the Defendants have been deliberately indifferent to his medical needs. *Id.* at

8.  Defendant Hand, the Health Services Administrator was advised of his medical condition from Plaintiff's family, but "deliberately refused to intervene to see that [Plaintiff] was given the proper medical treatment and attention."  *Id.* at 8.  In addition to Plaintiff's allegation that Defendant Ryker refused to treat him and claimed he was "faking" the injury, Defendant Houck is alleged to have deliberately delayed his x-rays which caused Plaintiff excessive pain and suffering.  *Id.*  Defendant Acosta is alleged to have shown "a reckless disregard" for his injured ankle, and failed to provide Plaintiff with a follow-up appointment so additional treatment could be provided. *Id.*

**Plaintiff's grievances**

Defendants have shown that on March 6, 2019, Plaintiff submitted a formal grievance to the warden of Wakulla Correctional Institution.  ECF No. 19-1 at 9.  Plaintiff complained both about the lack of medical care for his back, and his ankle.  *Id.* at 9-10.  He complained that his ankle was severely swollen and untreated.  *Id.*  He asked the warden to "intervene and direct the medical department to treat" the neurological issue with his back, as well as his ankle.  *Id.* at 10.  At the time that grievance was submitted, Plaintiff was housed at Wakulla C.I. Annex.  *Id.* at 9.

A response to his grievance was provided by Defendant Hand and

warden Coker.  ECF No. 19-1 at 11.  The response advised that a request

for physical therapy had been approved, and they were "awaiting an

appointment date."  *Id.*  His grievance was denied and he was advised he

could "obtain further administrative review" by filing an appeal to the

Bureau of Inmate Grievance Appeals.  *Id.*  The grievance response was

signed on March 19, 2019, and a stamp on the bottom of the grievance

states it was "mailed" to Plaintiff on March 22, 2019.  *Id.*  Presumably, the

"mailed" stamp was included because Plaintiff had been transferred.

In the meantime, Plaintiff had submitted an informal grievance[1] on

March 18, 2019, about the lack of medical care he received after injuring

his ankle on March 4th.  ECF No. 19-1 at 13.  That grievance was denied

on March 28, 2019, and the response informed Plaintiff that his "ankle

injury" had already "been addressed."  *Id.*

On May 1, 2019, Plaintiff submitted a grievance appeal to the

Secretary's Office.  ECF No. 19-1 at 7.  He was housed at the Reception

---

[1] Plaintiff has also filed an informal grievance on February 25, 2019, to the assistant
warden.  ECF No. 19-1 at 12.  That grievance was limited only to the lack of medical
care for his back injury.  ECF No. 19-1 at 12.  The grievance was denied and Plaintiff
was informed that was "a sick call issue."  *Id.*  That grievance was prior to Plaintiff's
ankle injury in early March 2019.

and Medical Center at the time.  *Id.*  Plaintiff complained, first, about his

back problem which had led to his difficulty in walking and the lack of

medical care provided.  *Id.*  Second, he complained about falling and

injuring his ankle, but not being provided treatment.  *Id.* at 8.[2]

The bottom of Plaintiff's appeal indicates he provided it to prison

officials on May 3, 2019.  *Id.* at 7.  The top of the appeal has a stamp which

indicates it was received in the office of grievance appeals on May 8, 2019,

and assigned log number 19-6-18039.  *Id.*  The Secretary's representative

responded to Plaintiff's appeal on May 24, 2019.  *Id.* at 6.  She stated that

Plaintiff's appeal was "Returned without Action" because it was "received in

non-compliance with Chapter 33."  *Id.*  The response quoted the rule for

Plaintiff: "Appeals must be received in the Office of the Secretary within 15

calendar days of the institutional response."  *Id.*

In support of the exhibits submitted with the motion to dismiss,

Defendants provided the declaration of Ashley Stokes, the custodian of

records for the Department's grievance appeals office.  ECF No. 20-1.  She

states that the Department's records show that Plaintiff filed only one

---

[2] On the second page of the appeal, ECF No. 19-1 at 8, Plaintiff essentially restated the information he provided with his formal grievance.  ECF No. 19-1 at 10.  It was not March 6, 2019, when Plaintiff submitted the appeal.  *Id.* at 8, 10.

grievance appeal to the Secretary's office, identified as log number 19-6-18039.  *Id.* at 2.

## The motion to dismiss, ECF No. 19

Defendants contend that Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).  ECF No. 19 at 4-5.  Because exhaustion must be proper and in compliance with the rules of the agency, and they contend Plaintiff's was not, Defendants request that this case be dismissed.

## Plaintiff's response, ECF No. 23

Plaintiff contends that he "met all the requirements of 42 U.S.C. § 1997e in exhausting his administrative remedies and cannot be held liable for deliberate administrative delays."  ECF No. 23 at 1.  He explains that after he filed his grievance at the institution on March 6, 2019, he was transported to RMC-Main Unit on March 28, 2019, for "emergency surgery on the broken ankle which was ultimately canceled at the last moment."  *Id.* at 2.  He advises that up to that point, he had not received a response to his March 6th grievance.  *Id.*  He states that he did not receive the response to his grievance until April 25, 2019.  *Id.*  He argues that officials "deliberately withheld the response from Plaintiff to hinder him from

pursuing any further action against DOC." *Id.* Plaintiff said that he "went ahead and filed the grievance appeal . . . on May 1, 2019, which was received by central office on May 8, 2019." *Id.* He contends that the appeal was received "within 15 days of the Warden's response being delivered to Plaintiff via institutional mail as required by Florida Administrative Code Chapter 33." *Id.*

**Analysis**

In enacting the Prison Litigation Reform Act, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement of § 1997e(a) is mandatory, whether the claim is brought pursuant to § 1983 or Bivens. Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998); Bryant v. Rich, 530 F.3d 1368, 1374 n.10 (11th Cir.), *cert. denied*, 129 S.Ct. 733 (2008). There is no discretion to waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing. Alexander, 159 F.3d at 1325; *see also* Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d

12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000). Even where an inmate seeks only monetary damages in a civil rights case, he must complete the prison administrative process if it could provide some sort of relief on the complaint although no money could be given administratively.  Booth v. Churner, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001).  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007).[3]

A prisoner must comply with the process set forth and established by the State's grievance procedures.  See Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).  Thus, § 1997e(a) of the PLRA requires "proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387

---

[3] The Court concluded that the statute does not impose "a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (stating "that exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances.").

(2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (quoted in Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1217-18 (11th Cir. 2010)).

Defendants "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies."  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (relying on Jones v. Bock, *supra,* and noting that because failure to exhaust is an affirmative defense under the PLRA, "inmates are not required to specially plead or demonstrate exhaustion in their complaints").  Factual disputes concerning exhaustion may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1373-74, 1376.  Even though evidence may be presented to support or refute a contention that a prisoner has not exhausted the grievance process, exhaustion is a "matter in abatement and not generally an adjudication on the merits," thus, it

should be raised and treated as a motion to dismiss, not a summary

judgment motion.  530 F.3d at 1374-75.  When motions to dismiss are

based on issues not enumerated under Rule 12(b), then Rule 43(c)

governs, "which permits courts to hear evidence outside of the record on

affidavits submitted by the parties."  *Id.* at 1377, n.16.  Further, a credibility

finding may be made after review of the relevant documentary evidence.[4]

*Id.*

   "[D]eciding a motion to dismiss for failure to exhaust administrative

remedies is a two-step process."  <u>Turner</u>, 541 F.3d at 1082.  "First, the

court looks to the factual allegations in the defendant's motion to dismiss

and those in the plaintiff's response, and if they conflict, takes the plaintiff's

version of the facts as true."  *Id.* at 1082.  "If, in that light, the defendant is

entitled to have the complaint dismissed for failure to exhaust

administrative remedies, it must be dismissed."  *Id.*  "If the complaint is not

---

[4] When issues of exhaustion arise, judges are permitted "to consider facts outside of
the pleadings and to resolve factual disputes so long as the factual disputes do not
decide the merits and the parties have sufficient opportunity to develop a record."
<u>Bryant</u>, 530 F.3d at 1376.  Requiring jury trials to resolve factual disputes over the
preliminary issue of exhaustion would be a novel innovation for a matter in abatement
and would unnecessarily undermine Congress' intent in enacting the PLRA's exhaustion
requirement: that is, to "reduce the quantity and improve the quality of prisoner suits."
530 F.3d at 1376-77.

subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (citing Bryant, 530 F.3d at 1373-74, 1376).

Plaintiff is housed within the Florida Department of Corrections which has an administrative grievance program, FLA. ADMIN. CODE R. 33-103. The Department's process outlines that when an inmate is grieving a medical issue, he must take two steps: (1) file a formal grievance with the warden's office, FLA. ADMIN. CODE R. 33-103.006(1)(a), 33-103.006(3)(e); and (2) submit an appeal to the Office of the Secretary, FLA. ADMIN. CODE R. 33-103.007(1). Parzyck, 627 F.3d at 1218. The grievance process also imposes certain time limits. Rule 33-103.011 requires that a formal grievance must "be received no later than 15 calendar days from . . . [t]he date on which the incident or action being grieved occurred if an informal grievance was not filed . . . ." FLA. ADMIN. CODE R. 33-103.011(1)(b). A response must be provided within "20 calendar days from the date of receipt of the grievance." FLA. ADMIN. CODE R. 33-103.011(3). Thereafter, the inmate's grievance appeal must by received by the Secretary's Office "within 15 calendar days from the date the response to the formal

grievance is returned to the inmate."  FLA. ADMIN. CODE R.

33-103.011(1)(c).  Furthermore, the Rule explains that "[w]hen determining

the time frames for grievances in all cases, the specified time frame shall

commence on the day following the date of the incident or response to the

grievance at the previous level."  FLA. ADMIN. CODE R. 33-103.011.

     In this case, there is no issue concerning Plaintiff's formal grievance.

It was dated March 6, 2019, accepted as timely by the warden's office, and

responded to on the merits.  The issue concerns the timeliness of Plaintiff's

grievance appeal; it must have been "received within 15 calendar days

from the date the response to the formal grievance" was returned to

Plaintiff.  FLA. ADMIN. CODE R. 33-103.011.  Defendants provide no

information as to when the formal grievance response was <u>received</u> by

Plaintiff.

     It is undisputed that the formal grievance was answered on March

19th and mailed on March 22nd; that was within the required 20-day time

period.  ECF No. 19-1 at 11.  Plaintiff, however, said that he did not receive

the response "via institutional mail" until April 25, 2019.  ECF No. 23 at 2.[5]

---

    [5] As noted above, if the allegations in the Defendant's motion to dismiss conflict with
plaintiff's response, plaintiff's version of the facts must be accepted as true.  Turner, 541
F.3d at 1082.

He explains that he was "on a medical transfer from Wakulla C.I. to RMC-Main Unit . . . and had no control over the delivery of institutional mail from one facility to another." *Id.* at 3. Accepting Plaintiff's assertion as true, it also is supported by common sense; there was no need to "mail" a response from the warden to Plaintiff if he were still housed at Wakulla C.I., the facility where he was located when he filed his formal grievance.

At any rate, after receiving the response, Plaintiff said he "immediately" prepared a grievance appeal on May 1, 2019. ECF No. 23 at 2. The evidence shows it was stamped "received" by the office of inmate grievance appeals on May 8, 2019. *Id.* at 7. The time between April 25th and May 8th is 13 days.

Plaintiff contends that he should not be penalized for the Department's delay in providing him with the response to his formal grievance. ECF No. 23 at 3. He states that he complied with the Department's Rules because he submitted his appeal within 15 calendar days of the date the response was returned to him. Plaintiff is correct. Despite the rejection of his appeal as untimely by the Department, the Defendants have not met their burden to show that Plaintiff failed to properly exhaust administrative remedies. Turner, 541 F.3d at 1082

(stating "defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies").

Defendants additionally argued that, pursuant to the Department's Rules, "if an institution fails to respond to a formal grievance within the time required, then the deadline for the inmate to file a timely grievance appeal is 15 calendar days from when the institution had to respond."  ECF No. 19 at 6 (citing to FLA. ADMIN. CODE R. 33-103.011(4)).  Defendants contend that the formal grievance response was stamped "mailed" on March 22, 2019, and, thus, it should be assumed that Plaintiff received the response "at least" by March 26, 2019.  *Id.* at 7.  Defendants then calculate that Plaintiff had until April 10th to appeal and, because his appeal was not filed May 8th, it was not timely.

In short, Defendants argue that because the Rules permit an inmate to proceed to the next step if a response is not timely received, the time must be calculated from that date.  ECF No. 19 at 7-8.  Defendants point to a prior case from this Court which so held.  *Id.* (citing Watkins v. Fox, No. 4:12cv215-RH-CAS, 2014 WL 1871929, at *5 (N.D. Fla. Apr. 9, 2014), report and recommendation adopted, No. 4:12cv215-RH-CAS, 2014 WL 1871939 (N.D. Fla. May 9, 2014) (finding that when "Plaintiff did not

receive a timely response, he was entitled to proceed with the appeal without waiting for a response to the formal grievance")).

In <u>Watkins</u>, the plaintiff wrote a notation on the grievance response which indicated "he received the response some twenty-one days after it was dated."  <u>Watkins</u>, 2014 WL 1871929, at *5.  By implication, the hand-written notation was suspect, presenting an unexplained and unusual delay in receipt by the plaintiff.

The <u>Watkins</u> case did not involve a response which had to be mailed to an inmate who had been transferred.  That distinction matters.

Another important distinction also matters.  The language of Rule 33-103.011(4) states that "expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process."  The fact that an inmate is "entitled" to take an action is distinguishable from the word "required."  Entitlement connotes a right or privilege, but it is not mandatory.  Plaintiff could have proceeded to the next step, but he was not required to do so.  Here, Plaintiff waited until he received his response to file his appeal; the Rule does not require him to otherwise.

Plaintiff has shown that he did not receive his formal grievance response until April 25, 2019.  Defendants have not shown that to be untrue.  Their assumption as to when Plaintiff likely received the response is insufficient to meet their burden of proof.  It appears that Plaintiff did what was required by the Department's rules, and Defendants' motion to dismiss, ECF No. 19, should be denied.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that Defendants' motion to dismiss, ECF No. 19, for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e) be **DENIED** and this case **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on August 30, 2021.


 S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**